UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                :
ANTHONY CRIVELLO RUSSO,             :

                         Plaintiff,       :    07 CIV 5795 (KMK)(MDF)

                                       :    REPORT AND RECOMMENDATION

    -against-

JAN B. GOLDING, POLICE OFFICER,
JOHN DIMILIA, SERGEANT, DARREL
ALGARIN, POLICE OFFICER, MICHAEL
GUEDES, POLICE OFFICER, JOSEPH
VOUSDEN, TROOPER, and KEVIN M.
CHORZEMPA, POLICE OFFICER,

                         Defendants.
----------------------------------------------------------------X
TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.

     In June 2007, Anthony Crivello Russo ("Plaintiff") commenced this action *pro se*, asserting federal civil rights claims under 42 U.S.C. § 1983, along with state law claims, all arising out of his December 24, 2004 arrest and subsequent prosecution, which resulted in a criminal conviction. Defendants, John Dimilia, Darrel Algaren and Michael Guedes (as referenced in their moving papers, the "Wallkill Defendants"), and Jan Golding, Joseph Vousden and Kevin Chorzempa, employees of the New York State Police (the "State Police Defendants"), now move to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6). For the reasons that follow, I respectfully recommend that the Court grant the State Police Defendants' motion (Docket Entry 27), as well as the Wallkill Defendants' motion (Docket Entry 23), which does not seek dismissal of Plaintiff's excessive force claim under federal law.

## BACKGROUND

The complaint as amended remains difficult to follow, but can be read to allege the following facts.  Plaintiff was arrested on December 24, 2004, in connection with an incident whereby it was alleged that he threatened to shoot a store clerk.  After leaving the store by car, Plaintiff was followed home by the police, where he was arrested and found to be in possession of a rifle.  After entering his property, the police shot Plaintiff multiple times in the back.  Plaintiff claims, therefore, that what began as a civil dispute or misunderstanding escalated into an "outrageous shooting" by the police.  *See* Am. Compl. ¶¶ 1, 20, 26, 28, 31-41.

On January 12, 2005, Plaintiff was indicted by a grand jury on charges arising from his December 24, 2004 arrest.  *Id.* ¶ 1.  He was later convicted at trial.  *Id.*, Relief Request ¶ 10.  On October 6, 2005, Plaintiff was sentenced and is currently serving his sentence at the Mid-State Correctional Facility in Marcy, New York ("Mid-State").[1]  *Id.* ¶¶ 1, 12.

Plaintiff asserts that there was no probable cause to arrest him, that the police did not have the right to enter or search his property because probable cause and "exigent circumstances" were lacking, and that any evidence found in his automobile or house is the fruit of an illegal search and must be suppressed.  *See id.* ¶¶ 22, 26-28, 31-32, 35, 37, 51.

Plaintiff apparently denies that statements he made to the police were voluntary because, as he alleges, he did not waive his Miranda rights at any time, and his statements were taken after he had been shot multiple times.  *Id.* ¶¶ 22-24.  Plaintiff further alleges that certain exculpatory

---

[1] The Court takes judicial notice of the inmate information made available on the New York State Department of Correctional Services website (available at http://nysdocslookup.docs.state.ny.us), which indicates that Plaintiff was convicted of criminal possession of a weapon in the third degree, a class D felony, and is currently serving his sentence at Mid-State.

evidence – for example, medical records, the police report and videotapes – was withheld or altered at trial. *Id.* ¶¶ 48, 50, 72. Plaintiff contends, therefore, that the criminal charges brought against him must be dismissed. *Id.* ¶ 41.

Plaintiff filed the original complaint in this action on June 19, 2007. On August 24, 2007, after Defendants had moved for a more definite statement pursuant to Rule 8, I allowed Plaintiff to amend the complaint to give him the opportunity to clarify his claims. Accordingly, Defendants withdrew their motions to dismiss and were given leave to renew the motions based on Plaintiff's amended pleading. Plaintiff filed the amended complaint on September 27, 2007, and both the Wallkill Defendants and the State Police Defendants then renewed their motions to dismiss.

The amended complaint can be read to allege claims sounding in barratry (*id.* ¶ 70), trespass (*id.* ¶ 71), fraud (*id.* ¶¶ 72-73), free speech, equal protection and due process violations (*id.* ¶¶ 41, 74), unreasonable search and seizure (*id.* ¶ 75), assault (*id.* ¶ 76), false arrest / imprisonment (*id.* ¶ 77), negligence (*id.* ¶ 78), intentional infliction of emotional distress (*id.* ¶ 79), malicious prosecution (*id.* ¶ 80), involuntary servitude (*id.* ¶ 81) and excessive force (*id.* ¶ 82). Plaintiff also seeks habeas relief in the form of immediate release, and money damages in connection with his confinement. *Id.*, Relief Request.[2]

---

[2] Habeas relief is not available to Plaintiff in this proceeding. A writ of habeas corpus pursuant to 28 U.S.C. § 2254 is the "exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)); *Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed."). Moreover, Plaintiff cannot use 42 U.S.C. § 1983 as a vehicle to recover money damages where, as here, his claim attacks the validity of his conviction. *Heck*, 512 US. at 487.

Now before me are the Defendants' renewed motions to dismiss the amended complaint pursuant to Rule 12(b)(6).[3]

## DISCUSSION

I.   **Motion to Dismiss *Pro Se* Complaint**

When considering a motion to dismiss a *pro se* complaint, the court must interpret the complaint liberally to raise the strongest arguments that the allegations suggest. *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (citations omitted). This is particularly true with *pro se* complaints that allege civil rights violations. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).

II.   **42 U.S.C. § 1983 Claims**

Plaintiff's claims under 42 U.S.C. § 1983 consist of allegations of malicious prosecution, false arrest or imprisonment, unreasonable search and seizure, violation of first amendment rights, denial of due process and equal protection, and excessive force. The Wallkill Defendants' submit that all of these claims, except the excessive force claim, must be dismissed under the doctrine set forth by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* Mem. of Law in Supp. of Wallkill Defs.' Mot. to Dismiss, Nov. 15, 2007 ("Wallkill Br.") at 5-8. The State Police Defendants' similarly move to dismiss Plaintiff's § 1983 claims under *Heck*, and

---

[3] The only argument Plaintiff raises in opposition to the motions is that the Defendants have failed to submit affidavits in support of the statements made in their motion papers. *See* Pl.'s Answer to Mot. to Dismiss, Dec. 7, 2007; Oral Arg. Tr., Jan. 4, 2008 at 3:14-17. At this stage of the litigation, however, a defendant need not submit supporting affidavits. Indeed, "a district court errs when it considers affidavits and exhibits submitted by defendants . . . in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (internal quotations, alterations and citations omitted).

assert that Plaintiff's claim for excessive force should be dismissed as against the State Police Defendants for failure to allege their personal involvement in the alleged wrongdoing giving rise to this claim. *See* Mem. of Law in Supp. of State Defs.' Mot. to Dismiss, Nov. 15, 2007 ("State Br.") at 3-6.

In *Heck v. Humphrey*, the Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Under this rule, Plaintiff's § 1983 claims must be evaluated on the following basis:

> [The Court] must consider whether a judgment in favor of plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the [Court] determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

*Id.* at 487.

Accordingly, disposition of a claim on *Heck* grounds "warrants only dismissal *without* prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a write of habeas corpus.'" *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (emphasis in original) (quoting *Heck*, 512 U.S. at 487).

### A. Malicious Prosecution

To succeed on a malicious prosecution claim under § 1983, the challenged proceeding must have terminated in favor of the plaintiff. *See Bonide Products, Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000). Thus, as the Supreme Court specifically held in *Heck*, success on a malicious prosecution claim necessarily implies the invalidity of a plaintiff's conviction. 512 U.S. at 484-87. Absent a showing that his conviction has been overturned, Plaintiff's claim for malicious prosecution is therefore barred by *Heck* and should be dismissed.

### B. False Arrest / Imprisonment[4]

Police officers are not subject to § 1983 liability for false arrest where the arrest at issue was supported by probable cause. *Duamutef v. Morris*, 956 F. Supp. 1112, 1117 (S.D.N.Y. 1997) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). A prosecution and conviction that is not overturned is conclusive evidence that an arrest was supported by probable cause. *Id.* (citing *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.")). Accordingly, Plaintiff's false arrest and false imprisonment claims necessarily call into question the validity of his conviction, and Plaintiff should therefore be barred from advancing these claims until and unless his conviction is overturned. *See, e.g., Younger v. City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) ("Because each of these claims [for false arrest, false imprisonment, malicious prosecution, and

---

[4] Under § 1983 and New York law, false arrest and false imprisonment claims both require the same showing. *See Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001).

violation of first amendment, sixth amendment and fourteenth amendment due process and equal protections rights] would render invalid [the plaintiff's] conviction . . . the Court finds that they are barred by that conviction.").

      C.      **Unreasonable Search and Seizure**

Plaintiff's allegations concerning the unreasonable search and seizure of Plaintiff and his property on December 24, 2004 also invoke a claim that is barred under *Heck*. Any decision in Plaintiff's favor on this claim would necessarily call into question the validity of Plaintiff's conviction for criminal possession of a weapon, which was based on the very search that Plaintiff complains of. *See* Am. Compl. ¶¶ 26-28.

It should be noted, moreover, that the scenario described in *Heck* – in which a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that resulted in the § 1983 plaintiff's still-outstanding conviction – is distinguishable from the case at bar. The Court in *Heck* explained that "[b]ecause of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action [for unreasonable search and seizure], even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." 512 U.S. at 487 n.7 (emphasis in original). Here, the evidentiary basis for the charged offense derives from the search that Plaintiff complains of – that is, the search from which the police recovered the evidence to charge Plaintiff with criminal possession of a weapon. Without this search, there would be no criminal charge filed or conviction rendered against Plaintiff. As such, judgment in favor of Plaintiff on his claim for unreasonable search and seizure *necessarily* calls in question the validity of Plaintiff's conviction. *See, e.g., Clayton v. City of Poughkeepsie*, No. 06 Civ. 4881, 2007 WL 2154196, at

*4 (S.D.N.Y. June 21, 2007) ("The doctrines of independent source, inevitable discovery, and harmless error discussed in *Heck* are not applicable, where, as here, the entire evidentiary basis for the charged offense derives from a single episode involving a single search that is now being questioned as part of a § 1983 action.").

Even if Plaintiff could show that the evidentiary basis for his charged offense derives from outside the December 24, 2004 search, the *Heck* doctrine would still apply here, where the gravamen of Plaintiff's suit is to recover for the injury of being convicted. *See Reed v. Powers*, No. 97 Civ. 7152, 2002 WL 472026, at *3 (S.D.N.Y. Mar. 28, 2002) ("If the gravamen of the suit seeks recovery for the 'injury of being convicted' through the wrongful conduct of the defendant, then the *Heck* doctrine applies even if the specific Section 1983 claim would not necessarily implicate the lawfulness of the conviction. This is relevant when doctrines, such as inevitable discovery or harmless error, would save the conviction even though there was a violation of the criminal defendant's constitutional rights.") (citing *Heck*, 512 U.S. at 487 n.7).

Accordingly, Plaintiff cannot proceed with a claim based on the allegedly unreasonable search and seizure described in the amended complaint without first demonstrating his conviction has been overturned.

### D.    First Amendment Retaliation

Plaintiff alleges that his First Amendment rights were violated because the Wallkill Police prosecuted him in retaliation for his "history of fighting wrongs done by the Wallkill Police," and that his prosecution was intended to silence his speech critical of government agencies and officials. Am. Compl. ¶¶ 41, 43-44. Plaintiff also apparently alleges that his First Amendment rights were violated by the police's response to his cursing at them and warning

8

them not to trespass on his land. *Id.* ¶ 44. Interpreted liberally, these allegations suggest that Plaintiff is asserting a claim for First Amendment retaliation.

"A claim for First Amendment retaliation cannot be sustained when the criminal prosecution was supported by probable cause." *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 573 (S.D.N.Y. 2001) (citations and internal quotations omitted). Here, Plaintiff's still-outstanding conviction is conclusive evidence, as a matter of law, that his arrest was supported by probable cause. *Id.* (citation omitted). Because Plaintiff's retaliation claim requires him to demonstrate the absence of probable cause supporting the charge against him, this claim necessarily calls into question the validity of his conviction. *Id.*; *Duamutef*, 956 F. Supp. at 1116. Accordingly, this claim should be dismissed under *Heck* absent a showing that Plaintiff's conviction has been overturned.

### E. Due Process

The allegations in support of Plaintiff's due process claim, as pointed out by the Wallkill Defendants (Wallkill Br. at 7), sound in false arrest. These allegations – that the police "invade[d]" Plaintiff's property, executed a false arrest, brought false charges and falsely imprisoned Plaintiff (Am. Compl. ¶ 74) – cannot support a claim for false arrest or imprisonment without Plaintiff first showing, as explained above, that his conviction has been overturned.

To the extent Plaintiff's due process claim is based on allegations that he was denied meaningful court access because certain exculpatory evidence was withheld at trial (*see* Am. Compl. ¶¶ 48, 50, 72), this claim sounds under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (prosecution's suppression of evidence favorable to accused violates due process where evidence is material to guilt or punishment) – it does, therefore, call into question the validity of his

9

conviction. *See Amaker*, 179 F.3d at 51 (due process claim based on the withholding of exculpatory evidence barred by *Heck*). Thus, Plaintiff may not proceed with this claim without first showing that his conviction has been overturned.

### F.     Equal Protection

Plaintiff alleges that he was selectively treated as compared with others similarly situated because he challenged police wrongdoing in the past. Am. Compl. ¶ 74. To state a claim for violation of equal protection by selective enforcement, a plaintiff must allege that: (1) he was selectively treated as compared with others similarly situated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or a malicious or bad faith intent to injure a person. *Crowley, Jr. v. Courville, et al.*, 76 F.3d 47, 52-53 (2d Cir. 1996).

Plaintiff's claim that the selective treatment he received was intended to punish his prior challenges to police action invokes his First Amendment right to free speech. Where, as here, a plaintiff's equal protection claim depends on the contention that the defendant's actions were impermissible under the First Amendment, the claims "coalesce." *Reckson Operating P'ship, L.P. v. New York State Urban Dev. Corp.*, No. 01 Civ. 1249, 2006 WL 2015971, at *6 (S.D.N.Y. July 12, 2006) (citing *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 363-64 (2d Cir. 2002)); *see also Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) ("[P]laintiffs' selective prosecution and retaliation claims 'coalesce.'"). As such, because I find that Plaintiff's First Amendment retaliation claim is barred by *Heck*, Defendants are also entitled to dismissal on Plaintiff's equal protection claim. *See Geiger v. Town of Greece*, No. 07-CV-6066, 2007 WL 4232717, at *12 (W.D.N.Y. Sept. 4, 2007) ("[S]ince the Court has already determined that the

First Amendment retaliation claim fails as a matter of law, the retaliatory selective enforcement claim also fails.") (citations omitted); *Reckson*, 2006 WL 2015971, at *6.

### G.    Excessive Force

The State Police Defendants assert that the allegations in the amended complaint sounding in excessive force do not state a claim against any of the three State Police Defendants. They claim, therefore, that this claim must be dismissed as against the State Police Defendants because personal involvement is a prerequisite to § 1983 liability. State Br. at 4.

It is well settled that in order to state a claim under § 1983, a plaintiff must allege direct or personal involvement in the alleged constitutional violation. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). Personal involvement is not limited to direct participation, however. *Younger*, 480 F. Supp. 2d at 731. "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).

Here, Plaintiff's allegations of excessive force are aimed at the Wallkill Defendants, not the State Police Defendants. *See* Am. Compl. ¶¶ 76, 78, 82. Missing from the amended complaint is any allegation of the State Police Defendants' direct participation or failure to intervene in the alleged use of excessive force that caused injury to Plaintiff. Accordingly, Plaintiff's claim for excessive force should be dismissed as to the State Police Defendants. *See*,

*e.g.*, *Rodriguez v. Westchester County Jail Corr. Dep't*, No. 98 Civ. 2743, 2000 WL 16925, at *1 (S.D.N.Y. Jan. 10, 2000) (dismissing claim for excessive force for failure to allege personal involvement).

**III.     State Law Claims**

    **A.     Trespass, Assault, Negligence and Intentional Infliction of Emotional Distress**

In addition to Plaintiff's federal claims, the amended complaint can be read to assert state law tort claims sounding in trespass, assault, negligence and intentional infliction of emotional distress. *See* Am. Compl. ¶¶ 71, 76, 78, 79. Where, as here, the plaintiff seeks to assert pendent state law claims to a federal civil rights action in federal court, it is well settled that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Felder v. Casey*, 487 U.S. 131, 151 (1988) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)).

Thus, Plaintiff's state law claims are governed by New York General Municipal Law § 50-i(1), which provides, in relevant part:

> No action or special proceeding shall be prosecuted or maintained against a city, county, town, village . . . for personal injury . . . or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village . . . or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the city, county, town, village . . . in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . .

These provisions apply not only to claims against municipalities, but also to suits against

12

"officers, agents or employees whose conduct caused the alleged injury." *Warner v. Village of Goshen Police Dep't,* 256 F. Supp. 2d 171, 174 (S.D.N.Y. 2003) (citations, alterations and internal quotations omitted).

New York General Municipal Law § 50-e, referenced in § 50-i(1), requires that a plaintiff file a notice of claim within ninety days after the claim arises. This requirement applies equally to state tort claims brought as pendent claims in a federal civil rights action, and failure to comply generally requires dismissal. *Id.* at 175.

Here, both the State Police and Walkill Defendants contend that Plaintiff never filed a notice of claim. State Br. at 6; Wallkill Br. at 8-9. Plaintiff has not alleged that he did so, and does not dispute the Defendants' assertion. Even if Plaintiff had filed a timely notice of claim, however, these state law claims would be barred under the limitations period set forth under § 50-i(1)(c), which requires commencement of an action within one year and ninety days of the event on which the claim is based. Plaintiff did not file this action until June 19, 2007, about two and a half years after his encounter with the police, and over one and a half years after his sentencing. *See* Am. Compl. ¶ 1. Accordingly, Plaintiff's state law claims for trespass, assault, gross negligence and intentional infliction of emotional distress – all of which, as Plaintiff's alleges, arise from his arrest (*id.* ¶¶ 1, 71, 76, 78, 79) – should be dismissed based on Plaintiff's failure to file a notice of claim or commence a timely action in accordance with these provisions. *See*, *e.g.*, *Warner*, 256 F. Supp. 2d at 175 (dismissing state law claims for intentional infliction of emotional distress, invasion of privacy and negligence as time-barred by the one year and ninety day limitations period applicable under § 50-i); *Hyde v. Arresting Officer Caputo*, No. 98 CV 6722, 2001 WL 521699, at *5 (E.D.N.Y. May 11, 2001) (dismissing

state law claim for assault, *inter alia*, as time-barred under one year and ninety day limitations period); *see also Middletown v. City of New York*, No. 04-CV-1304, 2006 WL 1720400, at *15-16 (E.D.N.Y. June 19, 2006) (dismissing state law claims for fraud, fraud by omission, abuse of process, official misconduct, perjury and intentional infliction fo emotion distress for failure to comply with notice of claim requirements).

    **B.**    **Fraud**

In support of his claim for fraud, Plaintiff alleges that the police withheld exculpatory evidence. Am. Compl. ¶¶ 72-73. Interpreted liberally, this can be read as no more than a due process claim that sounds under *Brady*. *See Youngblood, Jr. v. West Virginia*, 547 U.S. 867 (2006) ("*Brady* suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.") (citations and internal quotations omitted). As explained above, this claim is barred by *Heck*. *See* II.E., above; *Amaker*, 179 F.3d at 51.

    **C.**    **Barratry**

"As explained by the Supreme Court, '[p]ut simply, maintenance is helping another prosecute a suit;[5] champerty is maintaining a suit in return for a financial interest in the outcome; and barratry is a continuing practice of maintenance or champerty.'" *Elliot Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 372 (2d Cir. 1999) (quoting *In re Primus*, 436 U.S. 412, 425 n.15 (1978)).

---

[5] Maintenance has also been described as "[t]he furnishing of money by a layman for the purpose of permitting a lawyer to provide, in part, costs and expenses in carrying on litigation for a third party." *Martinez v. Barasch*, No. 01 Civ. 2289, 2005 WL 2465493, at *6 (S.D.N.Y. Oct. 5, 2005) (quoting *Kane v. Sesac, Inc.*, 54 F. Supp. 853, 859 (S.D.N.Y. 1943)).

In support of his claim for barratry, Plaintiff cites charges brought against him in December 1995 for a housing violation, and alleges that "the Town of Wallkill officials are repeating legal actions solely to harass [him]." Am. Compl. ¶ 70. Missing from these allegations, however, is an account of how the Wallkill Defendants are providing legal fees to carry out litigation involving Plaintiff, or an explanation of how these Defendants have a financial interest in the outcome of any litigation involving Plaintiff. Indeed, the notion that any of the Defendants are engaged in barratry – the "vexatious incitement to litigation" (*Black's Law Dictionary* 144 (7th ed. 1999)) – is wholly unsubstantiated and without merit.

### D.   Involuntary Servitude

"To state a claim for involuntary servitude [p]laintiffs must allege more than they were underpaid for the work they did. They must further allege that they suffered physical or legal coercion which compelled their continued employment with the [d]efendants." *Stewart v. Crosswalks Television Network*, No. 98 CV 7316, 2002 WL 265162, at *7 (S.D.N.Y. Feb. 25, 2002) (citing *U.S. v. Kozminski*, 487 U.S. 931, 948 (1988)). Plaintiff alleges that he was forced by a judge to "pay out excessive bail and to labor to keep in contact with the bail bondsmen," and that "[t]he judge use[d] coercion by the threat of [Plaintiff] not getting out of jail and getting proper health care to force [Plaintiff] to pay out thousands of dollars to agents of the court, which [he] ha[d] to work for." Am. Compl. ¶ 81. But the amended complaint fails to allege what work Plaintiff was purportedly forced to do, or in what way he was underpaid for the work he did. Plaintiff's conclusory allegations also fail to allege how this claim has anything to do with the Defendants in this case. Accordingly, Plaintiff's claim for involuntary servitude is without merit.

15

In any event, Plaintiff is precluded from bringing any of these state law claims in light of his failure to adhere to the notice of claim requirements. *See Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims.") (emphasis in original); *Alexander v. City of New York*, No. 02 Civ. 3555, 2004 WL 1907432, at *22 (S.D.N.Y. Aug. 25, 2004) ("[T]he New York notice of claim requirement applies to both common law causes of action, and to actions founded upon violations of state constitutional provisions.").

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Court grant the State Police Defendants' motion to dismiss, as well as the Wallkill Defendants' motion to dismiss, which does not seek dismissal of Plaintiff's excessive force claim under federal law.

Specifically, I recommend that Plaintiff's § 1983 claims, other than his claim for excessive force, be dismissed without prejudice. *See Amaker*, 179 F.3d at 52.

With respect to Plaintiff's excessive force claim against the State Police Defendants, I recommend that given Plaintiff's *pro se* status, this claim be dismissed without prejudice to Plaintiff being granted leave to replead should discovery reveal that Plaintiff can allege facts supporting the personal involvement of the State Police Defendants in Plaintiff's injury. *See, e.g.*, *Warren v. Goord*, 476 F. Supp. 2d 407, 413-14 (S.D.N.Y. 2007) (giving *pro se* plaintiff opportunity to amend complaint if discovery reveals information that would allow plaintiff to allege personal involvement of prison superintendent in plaintiff's injuries).

I further recommend that all of Plaintiff's state law claims be dismissed with prejudice. *See Fair v. Weinburg*, No. 02-CV-9218, 2006 WL 2801999, *10 (S.D.N.Y. Sept. 28, 2006)

(plaintiff is unable to cure failure to serve notice of claim after one year and ninety days have passed since plaintiff's injury).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days (*see* Fed. R. Civ. P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States Courthouse, 300 Quarropas Street, Room 533, White Plains, New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Karas. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988).  Requests for extensions of time to file objections must be made to Judge Karas and should not be made to the undersigned.

IT IS SO ORDERED.

Dated: February __, 2008
White Plains, New York

Respectfully submitted,

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

The Honorable Kenneth M. Karas, U.S.D.J.

Anthony C. Russo (05A5228), *pro se*
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

Steven C. Stern
Miranda Sokoloff Sambursky Slone Verveniotis LLP
240 Mineola Blvd.
Mineola, NY 11501

John E. Knudsen
Assistant Attorney General
120 Broadway
New York, NY 10271